UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WM. WRIGLEY JR. COMPANY        )
                               )
          Plaintiff,           )
                               )        No. 21 C 2357
     v.                        )
                               )        Judge Sara L. Ellis
TERPHOGZ, LLC, and JOHN DOES 1-5,    )
                               )
          Defendants.          )

## OPINION AND ORDER

Plaintiff Wm. Wrigley Jr. Company ("Wrigley"), headquartered in Chicago, Illinois, owns the SKITTLES brand of fruit-flavored candy. Defendant Terphogz, LLC ("Terphogz") began selling cannabis, drug paraphernalia, and promotional merchandise under the mark ZKITTLEZ. After learning of Terphogz's sale of ZKITTLEZ goods, including in Illinois, Wrigley filed this lawsuit against Terphogz and John Does 1-5 (the "Doe Defendants"), third parties who have bought ZKITTLEZ goods and resold them to end users in Illinois. Wrigley brings trademark infringement, false designation of origin, unfair competition, trademark dilution, cybersquatting, and related claims under the federal Lanham Act, 15 U.S.C. §§ 1114 and 1125, the Illinois Uniform Deceptive Trade Practices Act, 815 Ill Comp. Stat. 510/1 *et seq*., Illinois common law, and the Illinois Anti-Dilution Act, 765 Ill. Comp. Stat. 1036/65. Terphogz filed a motion to dismiss for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3) or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1406(a) or 1404(a). Because the Court finds both that it has personal jurisdiction over Terphogz and the Northern District of Illinois is the proper venue for Wrigley's claims, the Court denies Terphogz's motion to dismiss. The Court further denies Terphogz's alternative request to

transfer venue because Terphogz has not shown that the convenience of the parties and witnesses as well as the interest of justice requires transferring this case to the Northern District of California.

## BACKGROUND[1]

Wrigley, a candy manufacturer based in Chicago, Illinois, owns the SKITTLES candy brand. Nearly a generation ago, Wrigley launched an advertising campaign for SKITTLES featuring the slogan TASTE THE RAINBOW. Both packaging and advertising for the candy feature Wrigley's SKITTLES mark, TASTE THE RAINBOW slogan, and S logo, as shown below.



Doc. 12 ¶ 1. Terphogz, a limited liability company located in Mendocino, California, sells cannabis, drug paraphernalia, and promotional merchandise under the name ZKITTLEZ. An illustration of its goods and advertising are depicted below:

---

[1] In addressing Terphogz's motion to dismiss, the Court is not limited to the pleadings. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Therefore, the Court draws the facts from the first amended complaint and the additional documents submitted by the parties. The Court resolves all factual conflicts and draws all reasonable inferences in Wrigley's favor. *Id*. at 782–83.



*Id*. ¶ 2.  The Doe Defendants are businesses located in Illinois who purchase Terphogz's

ZKITTLEZ goods and advertise and resell them to end users in Illinois.

Terphogz operated an interactive website at zkittlez.com where it advertised, distributed,

and sold cannabis, cannabis- and cannabidiol-related goods, drug paraphernalia, clothing, and

merchandise nationwide, including to Illinois residents, under the marks ZKITTLEZ,

TAZTETHEZTRAINBRO, ZKITTLEZ HEMP, ZKITTLEZ HEMP & Cloud Design, and a Z

logo (collectively, the "ZKITTLEZ Marks").  Its website enabled a customer to calculate

shipping charges using their zip code, with Illinois zip codes as a valid option.  Terphogz also

operates a Facebook account under the name "Zkittlez-Hemp108831180811606" and Instagram

accounts under the names "_zkittlez_" and "_zkittlez hemp_" and "terphogz," which advertise

ZKITTLEZ goods to Illinois residents.

Jon Orantes, Terphogz's managing member, represents that Terphogz itself does not

engage in cannabis sales; rather, it licenses its intellectual property rights to other companies

engaged in the legal cannabis industry in California and Oregon.  According to Orantes, Terphogz does not engage in business in Illinois, has never run any targeted advertising aimed at Illinois, and has not entered into any contracts or other business relations with companies or individuals located in Illinois.  Additionally, Terphogz's three members have never traveled to Illinois for business purposes.  Finally, Orantes states that Terphogz has not authorized the sale of cannabis products in Illinois bearing the ZKITTLEZ mark.  Instead, according to Orantes, Green R Fieldz Corp., run by a single member of Terphogz, operated the website at www.zkittlez.com that sold ZKITTLEZ merchandise from 2015 to May 2021, at which time the website was shut down.  The website was accessible nationwide and items on the website were available for shipment to all fifty states.  In reviewing the records of sales of merchandise from the website, the gross proceeds amounted to $31,648.82.  However, according to Orantes, these profits never made it to Terphogz, but rather the single member running Green R Fieldz kept them.  Since 2017, Green R Fieldz sold only twelve items of merchandise, in eight transactions amounting $634.98, through www.zkittlez.com to individuals with addresses in Illinois.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) challenges the Court's jurisdiction over a party. Fed. R. Civ. P. 12(b)(2).  When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted).  If the Court rules on the Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Id*. at 392–93; *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "reads the complaint

liberally with every inference drawn in favor of [the] plaintiff," *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). However, if the defendant submits "evidence opposing the district court's exercise of personal jurisdiction, the plaintiff[ ] must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff," *GCIU-Emp. Ret. Fund*, 565 F.3d at 1020 n.1, but resolves "any factual disputes in the [parties'] affidavits in favor of the plaintiff," *Felland*, 682 F.3d at 672.

A motion to dismiss under Rule 12(b)(3) challenges the plaintiff's choice of venue as improper. Fed. R. Civ. P. 12(b)(3). "Once a defendant challenges the plaintiff's choice of venue, the plaintiff bears the burden of establishing" proper venue. *Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 951 (N.D. Ill. 2017). To resolve a Rule 12(b)(3) motion, the Court accepts the truth of all allegations in the complaint, unless the defendant's affidavits contradict the allegations. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016). The Court may consider evidence the parties submit outside the pleadings; in doing so, the Court resolves all factual conflicts and draws all reasonable inferences in the plaintiff's favor. *Id.* at 809–10; *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809–10 (7th Cir. 2011); *Nicks*, 260 F. Supp. 3d at 952. If venue is improper, the Court must dismiss the case or, if it is "in the interest of justice," transfer the case to any district or division where the case could have been brought. *Nicks*, 260 F. Supp. 3d at 952; 28 U.S.C. § 1406(a).

## ANALYSIS

Terphogz moves to dismiss Wrigley's claims against it for three reasons: first, that the Court lacks personal jurisdiction over it under Rule 12(b)(2); second, that venue is improper

under Rule 12(b)(3); and finally, in the alternative, that the Court should transfer this case pursuant to 28 U.S.C. § 1406(a) or 1404(a) to the Northern District of California. The Court will address each argument in turn.

## I.    Personal Jurisdiction

The Lanham Act does not authorize nationwide service of process; thus, the Court may only exercise jurisdiction over Terphogz if authorized both by the United States Constitution and Illinois law. *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 902 (N.D. Ill. 2015); *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1046–47 (N.D. Ill. 2015). Illinois "permits its courts to exercise personal jurisdiction on any basis permitted by the constitutions of both Illinois and the United States." *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011); 735 Ill. Comp. Stat. 5/2–209. To the extent the federal constitutional and Illinois statutory inquiries diverge, "the Illinois constitutional standard is likely more restrictive than its federal counterpart," but both essentially focus on whether exercising jurisdiction over a defendant is fair and reasonable; therefore, a single inquiry suffices. *KM Enters, Inc. v. Global Traffic Techs.*, Inc., 725 F.3d 718, 732 (7th Cir. 2013); *C.H. Johnson Consulting, Inc. v. Roosevelt Rds. Naval Station Lands & Facilities Redevelopment Auth.*, No. 1:12–cv–08759, 2013 WL 5926062, at *2 (N.D. Ill. Nov. 5, 2013). The Court asks, then, one constitutional question: does Terphogz have "certain minimum contacts with [Illinois] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice[?]'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

6

Personal jurisdiction comes in two forms: general and specific. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). Wrigley does not contend that this Court has general jurisdiction over Terphogz, so the Court limits its analysis accordingly. Specific jurisdiction exists "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010). The Court looks to the "defendant's suit-related conduct" and its connection to the forum state; "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 283, 286 (2014); *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 915–16 (7th Cir. 2015). The Court considers "whether the conduct underlying the claims was purposely directed at the forum state," looking at whether Terphogz engaged in "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 702–03 (7th Cir. 2010).

### A.    Minimum Contacts

Wrigley argues that Terphogz has sufficient minimum contacts with Illinois based on the sale of its purportedly infringing merchandise to Illinois customers. Terphogz contends that these purchases do not show that Terphogz targeted its products to Illinois customers and instead only reflect that a third party managed by one of its members operated an interactive website accessible in Illinois, which does not suffice to create jurisdiction in this state. The Seventh Circuit has cautioned that courts "should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply

7

because the defendant owns or operates a website that is accessible in the forum state." *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 760 (7th Cir. 2010); *see also be2 LLC*, 642 F.3d at 558 ("Beyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way target the forum state's market. If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." (citations omitted)). "In the context of cases like this one, that means [Wrigley] must show that [Terphogz] is actually operating an interactive website that is accessible in Illinois and that [Terphogz] has aimed such site at Illinois by standing ready, willing and able to ship its [] goods to customers in Illinois in particular (or otherwise has some sufficient voluntary contacts with the state)." *Am. Bridal & Prom Indus. Ass'n v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 192 F. Supp. 3d 924, 934 (N.D. Ill. 2016).

Here, Terphogz concedes that it sold and shipped ZKITTLEZ-branded products from its website at zkittlez.com to customers located in Illinois for an amount of $634.98, which equates to approximately 3% of the gross revenues from sales at zkittlez.com. But Terphogz argues that the small amount of the sales in Illinois do not suffice to establish the required minimum contacts for specific jurisdiction. In support of this argument, Terphogz points to three Seventh Circuit cases and claims that it did not purposefully direct its activities at Illinois because these cases required evidence of extensive sales from an interactive website to show the required targeting: *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421; *Illinois v. Hemi Group LLC*, 622 F.3d 754; and *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385. In *uBid*, the defendant "earn[ed] many millions of dollars annually from Illinois customers," leading the court to conclude that "[i]ts contacts cannot fairly be described as random, fortuitous, or attenuated." 623 F.3d at 428–

8

29.  In *Hemi*, the defendant affirmatively chose to allow sales in Illinois by selling 300 packs of cigarettes to one Illinois resident over two years.  622 F.3d at 756, 758.  Finally, in *Curry*, the defendants sold its allegedly infringing product to 767 Illinois residents in less than a one-year period.  949 F.3d at 399.

The Court disagrees with Terphogz that the number of sales serves as the determinative factor in a jurisdictional inquiry.  Instead, in the cases on which Terphogz relies, the Seventh Circuit also considered other factors that demonstrated that the defendant took steps to purposely target the forum state.  *See Curry*, 994 F.3d at 399 (sufficient minimum contacts where the defendant only sold its products online, the website included Illinois as a ship-to option, the defendant sent written confirmation to Illinois customers, and the defendant shipped its product to 767 Illinois customers); *uBid*, 623 F.3d at 428–29 (sufficient minimum contacts based on defendant's sales to Illinois customers, national scale of operations, and advertising in Illinois); *Hemi*, 622 F.3d at 758 (sufficient minimum contacts where the defendant operated a commercial website through which you could purchase cigarettes for shipment to forty-nine states, but not New York, and shipped cigarettes to an Illinois resident).  Here, Terphogz did more than just sell a minimal number of products to Illinois residents; it operated an interactive website that allowed Illinois customers to calculate shipping charges and then shipped purchased products to Illinois customers.  These actions suffice to show that Terphogz purposefully availed itself of doing business in Illinois.  *See Curry*, 949 F.3d at 399 ("Revolution's interactive website for the sale of its product requires the customer to select a shipping address.  Illinois is among the 'ship-to' options from which the customer must choose"); *Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, 2021 WL 2633317, at *2 (N.D. Ill. June 25, 2021) ("that defendants sold and shipped five products to addresses in Illinois" sufficed to confirm "that defendant affirmatively selected Illinois as a

shipping target"); *Tommy Hilfiger Licensing, LLC, et al. v. The P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 20 C 7477, Doc. 46 (N.D. Ill. March 24, 2021) (the plaintiff showed that the defendant purposefully availed itself of doing business in Illinois where it "offered evidence tending to show that [the defendant], though not physically located in Illinois or even in the United States, operated an interactive website through which it purposefully offered products for sale to consumers, including consumers located in Illinois, who would then select an address where the products would be shipped, including Illinois as one of the options"); *Volkswagen AG v. iman365-usa*, No. 18-CV-06611, 2020 WL 977969, at *3 (N.D. Ill. Feb. 28, 2020) (the defendant purposefully directed conduct to Illinois where it "operated a commercial, interactive online store through which U.S. customers could purchase its products," engaged in ninety-five transactions with Illinois customers over eight months, and "[a]t least one of these transactions involved shipping a counterfeit Audi product to Illinois"); *Monster Energy Co.*, 136 F. Supp. 3d at 907 (specific jurisdiction existed over out-of-state sellers of counterfeited merchandise based on offering merchandise for sale over the internet in Illinois and the purchase of the products by consumers in Illinois).

### B.    Relatedness

In order for the Court to exercise specific jurisdiction over Terphogz, Wrigley's claims must arise out of Terphogz's contacts with Illinois. *Hemi*, 622 F.3d at 759. Terphogz argues that the minimal sales in Illinois are not sufficiently suit-related to support jurisdiction because its allegedly infringing activities occurred in California, not Illinois, and Terphogz has never sent corporate officers or employees into Illinois. But "[j]urisdiction . . . may not be avoided merely because the defendant did not physically enter the forum State." *Burger King*, 471 U.S. at 476. And here, the claims brought by Wrigley arise out of the infringing products shipped to Illinois

and other states; that Terphogz developed the ZKITTLEZ trademark and products in California does not matter. *Monster Energy Co.*, 136 F. Supp. 3d at 908 ("Defendants offered to sell counterfeit Monster Energy Products on its AliExpress Internet store to individuals with Illinois addresses. Such actions constitute tortious activity committed in Illinois, and defendants' actions surrounding those offers triggered MEC's claims against it. Accordingly, MEC's claims arise directly out of the defendants' contacts with Illinois."); *see uBID*, 623 F.3d at 432 ("The claim brought by uBID in Illinois arises directly out of GoDaddy's registration of the infringing domain names bought by customers it has solicited in Illinois and many other states. The claim bears a sufficient relationship to GoDaddy's business activities in Illinois to expect GoDaddy to defend itself in Illinois without violating the due process clause."). Thus, the relationship between Terphogz's contacts and Wrigley's claims against it is sufficient to establish the required relatedness.

### C.     Fair Play and Substantial Justice

The final inquiry in the Court's specific jurisdiction analysis is whether the exercise of personal jurisdiction over Terphogz would offend traditional notions of fair play and substantial justice. *See Int'l Shoe*, 326 U.S. at 316; *Felland*, 682 F.3d at 677. In this analysis, courts evaluate "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies*." Felland*, 682 F.3d at 677 (citation omitted). "[W]here a defendant who purposefully has directed his activities at forum

11

residents seeks to defeat jurisdiction, [it] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id*. (citation omitted).

Here, the factors weigh in favor of exercising jurisdiction over Terphogz. First, out-of-state defendants always face a burden, and the burden on Terphogz is minimal, even when considering the small size of the company. Second, the Court sees no unfairness in permitting this suit to proceed against Terphogz in Illinois because Illinois has "a strong interest in providing a forum for its residents, including [Wrigley], to seek redress for harms suffered within the state by an out-of-state actor." *Curry*, 949 F.3d 385 at 402; *Felland*, 682 F.3d at 677 (same); *uBID, Inc.*, 623 F.3d at 432 (noting "Illinois's significant interest in providing a forum for its residents to seek relief when they suffer harm in Illinois from a wrong that occurred at least in part in Illinois"). And third, Wrigley has an interest in obtaining convenient and effective relief, as its principal place of business, employees, and records are all located in Illinois.[2] The Court, therefore, may exercise specific jurisdiction over Terphogz based on its contacts with Illinois.

## II. Venue

Terphogz also seeks to dismiss Wrigley's first amended complaint based on improper venue under Rule 12(b)(3). When a defendant challenges venue under Rule 12(b)(3), the plaintiff has the burden to establish that venue is proper in this district. *First Health Grp., Corp. v. Sanderson Farms, Inc.*, No. 99 C 2926, 2000 WL 139474, *2 (N.D. Ill. Jan. 28, 2000).

Under 28 U.S.C. § 1391(b), a plaintiff may bring suit in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the

---

[2] Terphogz asserts that Wrigley should not be treated as an Illinois resident because, in actuality, Mars Wrigley is headquartered in New Jersey and its parent company, Mars, Incorporated is headquartered in Virginia. At this stage, however, the Court takes as true Wrigley's allegations that its principal place of business is Chicago, Illinois.

claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section,

any judicial district in which any defendant is subject to the court's personal jurisdiction with

respect to such action." 28 U.S.C. § 1391(b). Wrigley alleges that venue is proper in this district

pursuant to § 1391(b)(1), (b)(2), and (c)(2). However, the Court need only address § 1391(b)(2).

Under § 1391(b)(2), "the test is not whether a majority of the activities pertaining to the

case were performed in a particular district, but whether a substantial portion of the activities

giving rise to the claim occurred in a particular district." *Nicks*, 260 F. Supp. 3d at 952. "For

events to be considered substantial under the statute, it is sufficient for the plaintiff to establish

that the events occurring in the forum district were part of the historical predicate for the instant

suit." *Jackson v. N'Genuity Enters., Co.*, No. 14 C 2197, 2014 WL 4269448, at *6 (N.D. Ill.

Aug. 28, 2014) (citation omitted). As discussed above, Wrigley alleges that Terphogz infringed

its trademarks by selling ZKITTLEZ-branded products both inside and outside of Illinois, with

the injury felt by Wrigley in Illinois. Although Terphogz argues that venue is improper here

because it sold only a small number of goods to Illinois customers, "allegations of infringement

and resulting injury in this District are enough to establish that a 'substantial portion' of the

events giving rise to [Wrigley's] trademark . . . infringement claims—the crux of their lawsuit—

occurred in this District." *Brito v. Urbina*, No. 18 C 2276, 2018 WL 3672743, at *4 (N.D. Ill.

Aug. 2, 2018); *see Johnson v. Creighton Univ.*, 114 F. Supp. 3d 688, 697 (N.D. Ill. 2015)

(denying motion to dismiss for improper venue because the "facts before the court easily

satisf[ied]" § 1391(b)(2)'s requirements given that the alleged tortious conduct and injury to the plaintiff occurred in Illinois). Accordingly, the Court finds that venue is proper in this district.

## III.    Transfer Pursuant to 28 U.S.C. § 1404(a)

Finally, Terphogz moves to transfer venue pursuant to § 1404(a).[3]  Section 1404(a) provides that the Court may transfer venue to another district "for the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).  In order to transfer the case under § 1404(a), Terphogz must demonstrate that "(1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and the witnesses; and (4) transfer would serve the interest of justice." *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007).  Terphogz bears the burden of demonstrating that transfer is "clearly more convenient." *Heller Fin. Inc. v. Midwhey Powder Co*., 883 F.2d 1286, 1293 (7th Cir. 1989) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986)).  The transfer decision is committed to the Court's sound discretion because the "weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude." *Coffey*, 796 F.2d at 219.  The Court has determined that venue is proper here, and Wrigley does not contest the propriety of venue in the Northern District of California.  Therefore, the Court turns to whether transfer would serve the convenience of the parties and the witnesses as well as the interest of justice.

### A.    Convenience of the Parties and Witnesses

In evaluating the convenience of the parties and witnesses, the Court considers (1) Wrigley's choice of forum, (2) the situs of material events, (3) the relative ease of access to proof, (4) the convenience of the parties in litigating in the respective forums, and (5) the

---

[3] Because the Court finds venue appropriate in this district, it evaluates Terphogz's transfer request under § 1404(a), not § 1406(a).

convenience of the witnesses. *Sojka v. DirectBuy, Inc.*, No. 12 C 9809, 2014 WL 1089072, at *2 (N.D. Ill. Mar. 18, 2014).

Courts typically give a plaintiff's choice of forum substantial deference, particularly when the chosen forum, as here, is the plaintiff's home forum. *Brandon Apparel Grp., Inc. v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999); *see also In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (noting that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed" but "[r]arely . . . is not never" (citation omitted) (internal quotation marks omitted)). As a result, this factor weighs against transfer.

Terphogz next contends that the Northern District of California is the location of material events because that is the location of its principal place of business and where it made all decisions concerning use of the allegedly infringing marks. However, "events triggering trademark infringement may occur both in the district where . . . [Terphogz] is located and where [Wrigley] is located and confusion is likely to occur." *Ty, Inc. v. Collett*, No. 99 C 692, 1999 WL 300290, at *4 (N.D. Ill. May 6, 1999). This factor is therefore neutral.

As for sources of proof, any documents are likely to be stored electronically. Electronic documents are presumed to be easily transportable, so the access to proof factor does not weigh heavily in favor of either district. *See Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 840 (N.D. Ill. 2009) ("In this day and age, transferring documents from one district to another is commonplace and, given the widespread use of digital imaging in big-case litigation, no more costly than transferring them across town.").

In evaluating the convenience of the parties, the Court considers the parties' residences and their ability to bear the expense of litigating in each forum. *Brandon Apparel*, 42 F.Supp.2d

15

at 834. Granted, Terphogz is purportedly a "very small LLC," operating only within the

California market and with a licensee in Oregon, but "absent evidence to suggest that defending

this suit in Illinois will work a financial hardship on [Terphogz], the fact that it is 'smaller' than

[Wrigley] has little value." *Cent. States, Se., Sw. Areas Pension Fund v. Kurtz Gravel Co.*, No.

98 C 2174, 1998 WL 684216, at *3 (N.D. Ill. Sept. 18, 1998); *see Avesta Sheffield, Inc.*, 2000

WL 198462, at *7 ("Olympic argues that Avesta is a large, international company with revenues

in the multi-million dollar range and Olympic is very small in comparison. However, Olympic

offers no evidence to support its characterizations."). Because the Court should not transfer a

case merely to shift the inconvenience from one party to another, *Sage Prods., Inc. v. Devon

Indus., Inc.*, 148 F.R.D. 213, 216 (N.D. Ill. 1993), this factor remains neutral.

The Court thus turns to the convenience of witnesses, "often viewed as the most

important factor in the transfer balance." *Brandon Apparel*, 42 F. Supp. 2d at 834 (quoting *Rose

v. Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989)). The Court considers not just the

number of witnesses located in each forum but also the nature, quality, and importance of their

testimony. *Id.* The Court gives less weight to the convenience of party witnesses, whom the

Court presumes would appear voluntarily at trial in either district. *See AL & PO Corp. v. Am.

Healthcare Cap., Inc.*, No. 14 C 1905, 2015 WL 738694, at *4 (N.D. Ill. Feb 19, 2015) ("[T]he

convenience of witnesses who are within a party's control, such as a party's employees, is far

less important than the convenience of non-party witnesses."); *Bullard v. Burlington N. Santa Fe

Ry. Co.*, No. 07 C 6883, 2008 WL 4104355, at *4 (N.D. Ill. Aug. 28, 2008) ("Courts are less

concerned about the burden that appearing at trial might impose on witnesses who are either

employees of parties or paid experts; it is presumed that such witnesses will appear

voluntarily."). "In assessing this factor, courts focus on the nature and quality of the proposed

testimony and its relevance to the case." *Kjaer Weis v. Kimsaprincess Inc.*, 296 F. Supp. 3d 926, 932 (N.D. Ill. 2017). Moreover, "the presence of third party witnesses outside the subpoena power of this court is a factor which weighs heavily in favor of transferring." *Id*. at 933 (citation omitted). Here, Terphogz argues that the witnesses Wrigley will likely want to depose, such as former Terphogz employees or corporate officers, are in California. But Terphogz has not identified any such witnesses or described the content of their testimony. Therefore, the Court does not have sufficient information to allow it to conclude that litigating here would be significantly more inconvenient for third-party witnesses, making this factor neutral as well. *See Brandon Apparel*, 42 F. Supp. 2d at 834 ("[T]he court will not consider the convenience of unidentified witnesses").

### B.    Interest of Justice

Finally, the Court must consider whether transfer is in the interest of justice. "The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc*., 626 F.3d 973, 978 (7th Cir. 2010). Courts consider factors such as the likelihood of a speedy trial, each court's familiarity with the applicable law, the desirability of resolving controversies in each locale, and the relationship of each community to the controversy. *Id*.; *Coffey*, 796 F.2d at 220.

Terphogz concedes that factors related to docket congestion and the speed at which the case will proceed to trial do not weigh heavily in one direction or the other. But Terphogz argues that the desirability of resolving the controversy in each forum weighs in favor of transfer because the core of this dispute involves the use of an allegedly infringing mark in the California cannabis industry. Both states have interests in resolving this controversy, with one not being

17

stronger than the other. Although Wrigley asserts several claims under Illinois law, that does not necessarily mean this lawsuit should remain in this district because federal judges routinely apply state laws other than their own, making this factor neutral. *Fasoli v. Voltage Pictures, LLC*, No. 14 C 6206, 2014 WL 7365936, at *4 (N.D. Ill. Dec. 22, 2014); *Nw. Corp. v. Gabriel Mfg. Co.*, No. 95 C 2004, 1996 WL 73622, at *6 (N.D. Ill. Feb. 16, 1996) ("This action concerns the alleged infringement of a trademark owned by a plaintiff domiciled and doing business in [Illinois]. Plaintiff's complaint alleges several violations of federal trademark law . . . with which this Court is familiar and capable of adjudicating. Plaintiff also alleges violations of the common law of unfair competition, the Illinois Uniform Deceptive Trade Practices Act, and the Illinois Anti-Dilution Act. New York federal courts would not provide a better forum to litigate these Illinois state law claims.").

Ultimately Terphogz has failed to establish that the balance of private and public interests strongly favors transferring this case to the Northern District of California. *See In re Nat'l Presto Indus., Inc.*, 347 F.3d at 664 ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947))). Indeed, the purpose of § 1404(a) transfer is not to make incremental improvement: the transferee venue must be "clearly more convenient." *Heller Fin. Inc.*, 883 F.2d at 1293. That is not the case here, and so the Court denies Terphogz's motion to transfer.

**CONCLUSION**

For the reasons set forth above, the Court denies Terphogz's motion to dismiss [24].


Dated: November 17, 2021

SARA L. ELLIS
United States District Judge

19